UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X
KRISTA FRANCES SELIG, d/b/a
The Selig Law Group d/b/a
Majestic Settlement Services,                    MEMORANDUM & ORDER
                                                 17-CV-4510(JS)
                        Appellant,

             -against-

DRUCKMAN LAW GROUP PLLC and
ALLAN B. MENDELSOHN,

                        Appellees.
----------------------------------X

APPEARANCES
For Appellant:          Krista Frances Selig, pro se
                        137 Powerhouse Road 4W
                        Roslyn Heights, NY 11577

For Appellees:
Druckman Law Group
PLLC                    Stuart L. Druckman, Esq.
                        Druckman Law Group PLLC
                        242 Drexel Avenue
                        Westbury, NY 11590

Allan B.
Mendelsohn              Allan B. Mendelsohn, pro se
                        38 New Street
                        Huntington, NY 11743

SEYBERT, District Judge:

        Before the Court is an appeal filed by Krista Frances
Selig, pro se ("Appellant"), from Judge Robert E. Grossman's July
18, 2017 order vacating the automatic stay (the "Stay Relief
Order") in Appellant's Chapter 7 bankruptcy proceeding, which was
commenced in the United States Bankruptcy Court for the Eastern
District of New York (the "Bankruptcy Court") on January 5, 2017

(the "Bankruptcy Action"). (See Bankr. Pet., In re Selig, Bankr. No. 17-70042, Docket Entry 1; Stay Relief Order, In re Selig, Bankr. No. 17-70042, Docket Entry 41.) For the reasons that follow, the Bankruptcy Court's Stay Relief Order is AFFIRMED and this appeal is DENIED.

BACKGROUND

I.  Factual Background[1]

On January 23, 2006, Appellant executed a Fixed/Adjustable Rate Note in favor of "Concord Mortgage Corp., a New York Corporation" in the amount of $417,200 (the "Note"), which was secured by a mortgage (the "Mortgage") on the property located at 137 Powerhouse Road 4W, Roslyn Heights, New York 11577 (the "Property," and the transaction with Note and Mortgage, the "Mortgage Loan"). (Note, In re Selig, Bankr. No. 17-70042, Docket Entry 16-3, at 1; Mortg., In re Selig, Bankr. No. 17-70042, Docket Entry 16-4, at 1, 3.) On August 1, 2009, the Mortgage and the Note were assigned to The Bank of New York Mellon f/k/a The Bank of New York (the "Bank") as Trustee for the Certificateholders CWALT, Inc., Alternative Loan Trust 2006-HY10, Mortgage Pass Through Certificates Series 2006-HY10 (the "Trust," and the Bank

---

[1] The following facts are taken from the records of the Bankruptcy Action and the foreclosure action in New York State Supreme Court, Nassau County (the "State Court"), Index Number 23649/2010, involving the real property at issue in this appeal (the "Foreclosure Action").

as trustee for the Trust, the "Foreclosure Plaintiff"). (Assignment, In re Selig, Bankr. No. 17-70042, Docket Entry 16-5.) According to Shellpoint Mortgage Servicing ("Shellpoint")-- which, as described below, is the Foreclosure Plaintiff's servicing agent--Appellant defaulted on the Mortgage Loan by failing to make any payments since March 1, 2009. (See Stay Relief Mot., In re Selig, Bankr. No. 17-70042, Docket Entry 16-1, at 4 and ¶ 7.) On December 30, 2010, the Foreclosure Plaintiff commenced the Foreclosure Action against Appellant. (See Aug. 2017 Foreclosure Action Order, Docket Entry 12-7 (noting date on which the Foreclosure Action was commenced but mistakenly entering the year "1010" instead of "2010").)

The State Court granted the Foreclosure Plaintiff an order of reference on March 13, 2014. (See Mar. 2014 Foreclosure Action Order, Docket Entry 12-3.) Thereafter, the Foreclosure Plaintiff filed a motion for a judgment of foreclosure and sale, (see Sept. 2015 Foreclosure Action J. Order, Docket Entry 12-4), and Appellant filed an order to show cause seeking to vacate a State Court order in the Foreclosure Plaintiff's favor, (see Sept. 2015 Foreclosure Action OSC Order, Docket Entry 12-5). On September 25, 2015, the State Court granted the Foreclosure Plaintiff's motion for a judgment of foreclosure and sale and denied without prejudice Appellant's request to vacate its prior order. (See Sept. 2015 Foreclosure Action J. Order ; Sept. 2015

3

Foreclosure Action OSC Order.)  Appellant filed another order to
show cause, and on May 19, 2016, the State Court ruled that
Appellant's

> Order[s] to Show Cause[ ] seeking an Order
> staying the foreclosure and sale of the [ ]
> [P]roperty, an Order to vacate the judgment of
> foreclosure and sale and related relief is
> denied.  The Court finds that [Appellant's]
> assertions and proof are not factually or
> legally sufficient to support their request to
> stay the foreclosure and sale and to vacate
> the judgment of foreclosure and sale and
> related relief. Accordingly, the Court Orders
> that the Court Ordered Stay dated January 29,
> 2016 is immediately vacated and plaintiff may
> proceed with the foreclosure case.

(May 2016 Foreclosure Action Order, Docket Entry 12-6.)

A foreclosure sale was scheduled for January 10, 2017.
(See July 2017 OSC, In re Selig, Bankr. No. 17-70042, Docket Entry
37, at ECF p. 7.)  Before the sale took place, however, Appellant
filed a voluntary petition for relief under Chapter 7 of the
Bankruptcy Code in the Bankruptcy Court, which resulted in an
automatic stay and the cancellation of the sale. (see Bankr. Pet.)

On February 2, 2017, Shellpoint, as servicing agent for
the Foreclosure Plaintiff, filed a motion requesting that the
Bankruptcy Court grant relief from the automatic stay so that the
Foreclosure Action could proceed.  (See generally Stay Relief Mot.)
On March 22, 2017, Appellant opposed Shellpoint's motion and cross-
moved for an order deeming the claim to the Property to be

unsecured.  (Stay Relief Opp., <u>In re Selig</u>, Bankr. No. 17-70042, Docket Entry 24.)

On March 29, 2017, the Bankruptcy Court held a hearing on Shellpoint's motion.  (Mar. 2017 Hr'g Tr., Docket Entry 13-1.) At the hearing, Druckman Law Group PLLC ("Appellee"), as counsel for Shellpoint, acknowledged that it had served its motion on the incorrect bankruptcy trustee.  (Mar. 2017 Hr'g Tr., at ECF pp. 4-5.)  As a result, the Bankruptcy Court lifted the stay only as to Appellant and adjourned to May 3, 2017.  (Mar. 2017 Hr'g Tr., at ECF p. 5.)  Appellee indicated that before the next hearing, it would serve the motion on the correct bankruptcy trustee, Allan B. Mendelsohn ("Mendelsohn").  (Mar. 2017 Hr'g Tr., at ECF p. 5.)

On April 12, 2017, before the next hearing, the Bankruptcy Court granted Appellant a discharge pursuant to 11 U.S.C. § 727.  (Order of Discharge, <u>In re Selig</u>, Bankr. No. 17-70042, Docket Entry 30-1.)

At the May 3, 2017 hearing, the Bankruptcy Court noted that Appellee had not filed proof of service of the stay relief motion on Mendelsohn and adjourned to July 12, 2017, though Appellee noted that it had served the motion on Mendelsohn on April 3, 2017.  (May 2017 Hr'g Tr., Docket Entry 13-2, at ECF pp. 3-4.)  On May 4, 2017, Appellee filed the sworn proof of service, dated April 3, 2017, with the Bankruptcy Court, demonstrating that

it had served Mendelsohn with the motion. (Cert. of Serv., <u>In re</u> <u>Selig</u>, Bankr. No. 17-70042, Docket Entry 35.)

At the July 12, 2017 hearing, the Bankruptcy Court confirmed that Appellee had served the motion on Mendelsohn and granted the motion, vacating the stay with respect to the Foreclosure Action. (July 2017 Hr'g Tr., Docket Entry 13-3, 4:21-5:15, 8:2-18.) The Bankruptcy Court issued a written order to that effect on July 18, 2017, ordering that "[u]pon the application of Shellpoint . . . as Servicing Agent for [the Foreclosure Plaintiff], secured creditor, . . . the automatic stay is hereby vacated as to Movant, its successors or assigns, and they may pursue their statutory remedies in connection with the Property." (Stay Relief Order at 1.)

After the Bankruptcy Court vacated the automatic stay, the State Court in the Foreclosure Action ruled on another order to show cause that Appellant had filed. (<u>See</u> Aug. 2017 Foreclosure Action Order.) The order to show cause requested that the State Court vacate the judgment of foreclosure and sale based on alleged new evidence--a letter from the Bank dated November 21, 2016 (the "November 2016 Letter"). (<u>See</u> Aug. 2017 Foreclosure Action Order; Nov. 2016 Letter, Docket Entry 4, ECF pp. 36-37.) The November 2016 Letter provides, in pertinent part:

> The Bank, as trustee for [the Trust], does not
> have the authority to modify, foreclose on, or
> respond to concerns related to, the [Mortgage

> Loan] secured by the Property under the Trust's pooling and servicing agreement (the "Agreement").
>
> All servicing practices under the Agreement, including decisions concerning modifications, foreclosure and enforcement of the Mortgage Loan, fall solely under the authority of Bank of America, N.A., who is the master servicer for the Trust (the "Master Servicer"). Therefore, we have forwarded your letter concerning the Property to the Master Servicer.

(Nov. 2016 Letter.)  The State Court considered the November 2016 Letter, and on August 29, 2017, denied Appellant's request for relief.  (Aug. 2017 Foreclosure Action Order.)  It held that:

> Notwithstanding assertions to the contrary, the purported "new evidence[,]" i.e., [the November 2016 Letter], does not constitute proof that [the Foreclosure Plaintiff] lacked standing to commence this foreclosure action or that the [order granting the] motion for Judgment of Foreclosure and Sale should be vacated.  The letter demonstrates only that all servicing rights of the subject loan were delegated to the Master Servicer.  The letter is not evidence that [the Bank] was not the holder of the note and mortgage as of December 30, [2]010 when the action was commenced.

(Aug. 2017 Foreclosure Action Order at 1-2.)

Thereafter, the Foreclosure Action proceeded, and according to the parties to this appeal, the Property was sold to a third-party purchaser at a foreclosure sale on February 6, 2018. (Appellee's Status Letter, Docket Entry 9; Appellant's Status Letter, Docket Entry 10.)  According to Appellee, however, the

sale was rescinded because the Appellant perfected an appeal of the State Court's September 2015 order granting a judgment of foreclosure and sale, confirming the Referee's report, and related relief. (Appellee's Status Letter; see Sept. 2015 Foreclosure Action J. Order; see also, e.g., 2d Dep't's June 2018 Order, Index No. 2016-01284 (discussing "appeal from an order of the Supreme Court, Nassau County, dated September 25, 2015").) The parties have informed the Court that the appeal is fully briefed and was argued on May 29, 2018. (Appellee's Status Letter; Appellant's Status Letter.)

## II.  Procedural History

On July 31, 2017, Appellant appealed to this Court from the Stay Relief Order. (Notice of Appeal, Docket Entry 1.) Appellant filed her brief on November 27, 2017, (Appellant's Br., Docket Entry 4), and Appellee filed its opposition on December 20, 2017, (Appellee's Opp., Docket Entry 5.) Appellant filed her reply on January 18, 2018. (Appellant's Reply, Docket Entry 8.)

## DISCUSSION

## I.  Legal Standard

On appeal, this Court reviews the Bankruptcy Court's "legal conclusions de novo and its factual findings for clear error." Townsend v. Ganci, 566 B.R. 129, 133 (E.D.N.Y. 2017) (citations omitted), aff'd sub nom. In re Townsend, 726 F. App'x 91 (2d Cir. 2018). "Mixed questions of fact and law are subject

to de novo review." In re Vebeliunas, 332 F.3d 85, 90 (2d Cir. 2003) (citations omitted). The Court reviews "the Bankruptcy Court's decision to lift the automatic stay for abuse of discretion." In re Campora, No. 14-CV-5066, 2015 WL 5178823, at *4 (E.D.N.Y. Sept. 3, 2015) (citations omitted).

II. Appellant's Arguments

The scope of this appeal is limited to the Bankruptcy Court's Stay Relief Order. Accordingly, the Court will disregard Appellant's complaints of error in the Foreclosure Action, allegations regarding Appellees' use of "questionable" and "deceptive practices" (see, e.g., Appellant's Br. at 6, 8), and any other issues beyond the scope of this appeal.

Appellant's principal contention is that the Bankruptcy Court erred in granting Shellpoint's motion to vacate the automatic stay because Shellpoint is not a party to the Foreclosure Action, and the Foreclosure Plaintiff, for whom Shellpoint services mortgage loans, "clearly admits that [it] had no right to foreclose" on the Property. (Appellant's Br. at 7-9, 12-16, 26-27.) Appellant also argues that the Bankruptcy Court granted the motion prematurely and should have allowed the State Court to resolve Appellant's order to show cause to vacate the judgment of foreclosure and sale before lifting the stay. (Appellant's Br. at 9-11.) Additionally, Appellant maintains that the Bankruptcy Court abused its discretion "in not recognizing that the [stay

relief] motion was improperly served upon the trustee and when served, was served after the requisite time to reply had expired." (Appellant's Br. at 19-25.)  Finally, Appellant contends that "Appellee had been discharged in accordance with Federal Bankruptcy Laws."  (Appellant's Br. at 17-18.)

For the reasons that follow, the Court affirms the Bankruptcy Court's Stay Relief Order.

III. <u>The Stay Relief Order</u>

The Bankruptcy Court granted Shellpoint's motion and vacated the automatic stay in connection with the Property under 11 U.S.C. § 362(d)(1), (Stay Relief Order), which provides:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay--
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest. . . .

11 U.S.C. § 362(d)(1).

The Court first considers whether the Bankruptcy Court correctly found Shellpoint to be a party in interest under 11 U.S.C. § 362(d)(1), and then determines whether the Bankruptcy Court abused its discretion in finding cause to vacate the automatic stay.  See <u>In re Campora</u>, 2015 WL 5178823, at *4.

A.  Party in Interest

"The 'evidence necessary to establish standing' as a party in interest 'to seek stay relief to commence or continue a foreclosure action should include a demonstration that the movant has the right under applicable state law to enforce the mortgage.'" In re Campora, 2015 WL 5178823, at *4 (quoting In re Escobar, 457 B.R. 229, 239 (Bankr. E.D.N.Y. 2011)).  "[P]roof of standing does 'not require evidence which would be necessary to prevail over a claim objection or to prevail in an adversary proceeding asserting that the claimant does not hold a valid, perfected and enforceable lien.'"  Id. (quoting In re Escobar, 457 B.R. at 239).  Rather, "'the level of proof necessary to commence a foreclosure action under New York law . . . is the appropriate level of proof necessary to confer standing to seek stay relief.'"  Id. (quoting In re Escobar, 457 B.R. at 241) (ellipsis in original).

"'Under New York law, [a] plaintiff establishes its standing in a mortgage foreclosure action by demonstrating that, when the action was commenced, it was either the holder or assignee of the underlying note.'"  CIT Bank N.A. v. Elliott, No. 15-CV-4395, 2018 WL 1701947, at *7 (E.D.N.Y. Mar. 31, 2018) (internal quotation marks omitted) (alteration in original) (quoting OneWest Bank, N.A. v. Melina, 827 F.3d 214, 222 (2d Cir. 2016)).  "'Notably, [e]ither a written assignment of the underlying note or the physical delivery of the note prior to the commencement of the

foreclosure action is sufficient to transfer the obligation, and the mortgage passes with the debt as an inseparable incident.'" Id. (internal quotation marks omitted) (alteration in original) (quoting Melina, 827 F.3d at 222).

Initially, Shellpoint has shown that it is the servicing agent for the Foreclosure Plaintiff. (See Pooling and Servicing Agreement., Docket Entry 12-1, §§ 3.01-3.02 (explaining rights of master servicer to arrange for subservicing of loans and authority of master servicer or subservicers to effectuate foreclosure of property securing mortgage loans); Ltd. Power of Att'y, Docket Entry 12-2, at 1-2 (appointing Shellpoint as the Foreclosure Plaintiff's "attorneys-in-fact and agents, . . . for the limited purpose of executing and recording any and all documents necessary to effect (i) a foreclosure of a Mortgage Loan" and providing Shellpoint "the full power and authority to . . . execute and deliver . . . bankruptcy declarations for the purpose of filing motions to lift stays and other documents or notice filings on behalf of the [Foreclosure Plaintiff] in connection with foreclosure, bankruptcy and eviction actions"); see Ltd. Power of Att'y, ECF p. 10 (incorporating relevant Pooling and Servicing Agreement into Limited Power of Attorney); Dec. 2016 Letter, Docket Entry 4, ECF pp. 38-39 (explaining that while Bank of America and its predecessors previously serviced the Mortgage Loan on the Property, Shellpoint has since assumed servicing duties).)

Additionally, Shellpoint, as servicing agent for the Foreclosure Plaintiff, has shown that under New York law, it has standing to commence or continue a foreclosure action. (See Note at 5 (containing indorsement in blank); Mortg.; Assignment (predating commencement of the Foreclosure Action); Certification, Sidinger Decl., In re Selig, Bankr. No. 17-70042, Docket Entry 16-2, at ECF pp. 7-8 (certifying that Shellpoint, as servicing agent for the Foreclosure Plaintiff, is in possession of original Note, Mortgage, and Assignment); Sept. 2015 Foreclosure Action J. Order ("Motion by plaintiff seeking an Order for a Judgment of Foreclosure and Sale . . . is granted. Plaintiff has shown a right to maintain the action and a prima facie right to judgment as the holder of a note and mortgage executed by defendants and a default in making the required payments."); Aug. 2017 Foreclosure Action Order at 1-2 ("Notwithstanding assertions to the contrary, the purported 'new evidence[,]' i.e., [the November 2016 Letter], does not constitute proof that [the Foreclosure Plaintiff] lacked standing to commence this foreclosure action or that the [order granting the] motion for Judgment of Foreclosure and Sale should be vacated. . . . The letter is not evidence that [the Bank] was not the holder of the note and mortgage as of December 30, [2]010 when the action was commenced.").) As a result, Shellpoint is a party in interest entitled to move to modify the automatic stay. See In re Campora, 2015 WL 5178823, at *5 (finding that bank was

party in interest entitled to move for relief from the stay in bankruptcy court where it "produced a copy of the original note[ ] and demonstrated that it is the holder and owner of that note" and where the state court had "already determined that [the bank] had standing to pursue the foreclosure action"); see also In re Carssow-Franklin, 213 F. Supp. 3d 577, 592 (S.D.N.Y. 2016) (quoting In re Sia, No. 10-41873, 2013 WL 4547312, at *12 (Bankr. D.N.J. Aug. 27, 2013)) (citations omitted) ("Mortgage servicers have been determined to constitute authorized agents with standing to . . . seek stay relief.").

Notwithstanding the above, Appellant argues that the Bank admitted in the November 2016 Letter that it has no right to foreclose. (Appellant's Br. at 7-9.) According to Appellant, that admission vitiates the Foreclosure Plaintiff's standing in the Foreclosure Action, and by extension, Shellpoint's ability to bring the stay relief motion in the Bankruptcy Action. (Appellant's Br. at 7-9.)

Appellant's argument fails. First, the November 2016 Letter does not impact the Foreclosure Plaintiff's standing to bring the Foreclosure Action or Shellpoint's status as a party in interest. To be sure, the Foreclosure Plaintiff explained in the November 2016 Letter that it "does not have the authority to . . . foreclose on" the Mortgage Loan secured by the Property under the Pooling and Servicing Agreement, and that all servicing

practices under the Pooling and Servicing Agreement, "including decisions concerning . . . foreclosure and enforcement of the Mortgage Loan[ ] fall solely under the authority of Bank of America, N.A., who is the master servicer for the Trust."[2] (Nov. 2016 Letter at 1; see Pooling and Servicing Agmt.) However, this "admission" concerns only rights under the Pooling and Servicing Agreement and does not impact standing, which requires only a showing that a plaintiff was "'either the holder or assignee of the underlying note'" when the action was commenced. See Elliott, 2018 WL 1701947, at *7 (quoting Melina, 827 F.3d at 222); (Aug. 2017 Foreclosure Action Order at 1-2 (finding that the November 2016 Letter "does not constitute proof that [the Foreclosure Plaintiff] lacked standing to commence th[e] [F]oreclosure [A]ction")); see also U.S. Bank Nat'l Ass'n v. Saravanan, 146 A.D.3d 1010, 1012, 45 N.Y.S.3d 547 (2d Dep't 2017) (citations omitted) ("As a mortgagor whose loan is owned by a trust, the appellant does not have standing to challenge the plaintiff's possession or status as assignee of the note and mortgage based on purported noncompliance with certain provisions of the relevant pooling and servicing agreement.")).

---

[2] As discussed above, Shellpoint assumed Bank of America's servicing duties with respect to the Mortgage Loan. (Dec. 2016 Letter.) Accordingly, Bank of America's absence from the Foreclosure Action and Bankruptcy Action is of no moment, despite Appellant's arguments to the contrary. (See, e.g., Appellant's Br. at 14.)

Second, by challenging Shellpoint's status as a party in interest, Appellant is attempting to put the Foreclosure Plaintiff's standing into issue. In re Campora, 2015 WL 5178823, at *5; (see Appellant's Br. at 26-27 ("The evidence is clear on its face that the State Action is solely in the name of [the Bank]. . . . [I]f [the Bank] cannot foreclose, . . . then how can Shellpoint have any rights whatsoever[?] It is interesting to note that throughout the proceedings the Appellee[s] have never defended the issue of standing. . . . Essentially, this was an admission of the lack of standing by omission in their failure to explain themselves.").) That is, "[b]ecause the requirements for standing under § 362(d)(1) are equivalent to those to commence a foreclosure action in the state court, [Appellant's] appeal amounts to an attempt to re-litigate the New York State Court's Judgment of Foreclosure and Sale." In re Campora, 2015 WL 5178823, at *5. Accordingly, Appellant's arguments that the Foreclosure Plaintiff lacked standing to bring the Foreclosure Action--couched in terms of Shellpoint's lack of authority to move for relief from the automatic stay--are barred by the Rooker-Feldman doctrine. See id. ("[T]he Court notes that debtor's attempt to put [the bank's] standing into issue is also barred by the Rooker-Feldman doctrine and res judicata."); In re Sterling, Bankr. No. 14-12608, 2018 WL 313085, at *6 (Bankr. S.D.N.Y. Jan. 5, 2018) (citation omitted) (finding in lift-stay context that "[w]here a Movant has

obtained a valid state court foreclosure judgment establishing a bank's status as a secured creditor, the Bankruptcy Court is not permitted to rule again on the status of that creditor under the Rooker–Feldman doctrine (or, in the alternative, res judicata)").

In sum, as the State Court explained, "[t]he [November 2016 Letter] demonstrates only that all servicing rights of the subject loan were delegated to the Master Servicer. The [November 2016 Letter] is not evidence that [the Foreclosure Plaintiff] was not the holder of the [N]ote and [M]ortgage as of December 30, [2]010 when the action was commenced."[3] (Aug. 2017 Foreclosure Action Order at 2.) Accordingly, Shellpoint, the Foreclosure Plaintiff's servicing agent for the Mortgage Loan, is a party in interest entitled to move the Bankruptcy Court to vacate the automatic stay.

B. Vacating the Stay

The Court now turns to whether the Bankruptcy Court abused its discretion by granting Shellpoint's motion to vacate

---

[3] The Court notes that "granting or denying a stay relief motion is not and should not be considered a determination of the ultimate enforceability or unenforceability of the note and lien at issue. . . . Whether movants can ultimately prevail in the state foreclosure action and obtain a judgment of foreclosure is for the state courts to determine." In re Escobar, 457 B.R. at 236, 241. In other words, by vacating the stay, the Bankruptcy Court did not find that the Foreclosure Plaintiff is entitled to a judgment of foreclosure and sale, but merely allowed the Foreclosure Action to proceed in State Court. To the extent the State Court erred, those errors must be addressed by the state appellate court.

the automatic stay pursuant to 11 U.S.C. 362(d)(1) so that "Movant, its successors or assigns . . . may pursue their statutory remedies in connection with the Property." (Stay Relief Order at 1.)

As an initial matter, Appellant contends that service of the stay relief motion was flawed for two reasons: (1) when Shellpoint corrected its service error and served the proper trustee, Mendelsohn, "the Service included the original Motion," and therefore, "the time for a Response by the Trustee had passed," and (2) the certificate of service that Shellpoint filed on the Bankruptcy Court docket "only contains the Certificate of Service and the cover page of the Motion," and therefore, "there is no proof that they sent the Trustee the entire Motion." (Appellant's Br. at 22.)

These arguments are meritless. As to Appellant's first contention, the service error did not prevent Mendelsohn from responding. While he could have filed a written response to the motion (according to the certificate of service, he was served with the motion on April 3, 2017, well in advance of the final hearing on July 12, 2017), (Cert. of Service at 1), he was not required to do so. See FED. R. BANKR. P. 9014(a) ("In a contested matter . . . , relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this

rule unless the court directs otherwise."); Fed. R. Bankr. P. 9006(d) ("[A]ny written response [to a written motion] shall be served not later than one day before the hearing, unless the court permits otherwise."). As to Appellant's second contention, the certificate of service contains a sworn statement that Shellpoint served Mendelsohn with the relevant notice of motion, declaration, and motion, with exhibits. (Cert. of Service at 1.) The fact that Shellpoint did not re-upload the documents to the docket does not mean that it did not serve them as declared in the certificate of service. Further, Mendelsohn has access to the docket and could access the motion electronically. (See, e.g., Feb. 8, 2017 Electronic Statement entered by Mendelsohn, In re Selig, Bankr. No. 17-70042.)

Turning to the substance of the Bankruptcy Court's decision, in its review of the Stay Relief Order, this Court considers the "'non-exclusive list of factors that may be relevant in determining whether an automatic stay should be lifted for cause under § 362(d)(1),'" as set forth by the Second Circuit in In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990). In re Campora, 2015 WL 5178823, at *5 (quoting In re Watkins, Nos. 06-CV-1341 & 06-CV-0597, 2008 WL 708413, at *3 (E.D.N.Y. Mar. 14, 2008)). These factors include:

> (1) whether relief would result in a partial
> or complete resolution of the issues;
> (2) lack of any connection with or

> interference with the bankruptcy case;
> (3) whether the other proceeding
> involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with
> the necessary expertise has been
> established to hear the cause of action;
> (5) whether the debtor's insurer has
> assumed full responsibility for
> defending it; (6) whether the action
> primarily involves third parties;
> (7) whether litigation in another forum
> would prejudice the interests of other
> creditors; (8) whether the judgment
> claim arising from the other action is
> subject to equitable subordination;
> (9) whether movant's success in the other
> proceeding would result in a judicial
> lien avoidable by the debtor; (10) the
> interests of judicial economy and the
> expeditious and economical resolution of
> litigation; (11) whether the parties are
> ready for trial in the other proceeding;
> and (12) impact of the stay on the
> parties and the balance of harms.

In re Sonnax Indus., Inc., 907 F.2d at 1286.

The Court has considered these factors and concludes that there was cause to vacate the stay under § 362(d)(1). As Shellpoint asserted in its motion, it is undisputed that Appellant last made a mortgage payment on February 1, 2009, over nine years ago. (Stay Relief Mot. ¶ 7; Stay Relief Mot. Worksheet, In re Selig, No. 17-70042, Docket Entry 16-2, ¶ 11); see In re Campora, 2015 WL 5178823, at *6 ("[Appellant], in his appeal, offers no evidence to contradict [the bank's] assertion that he was delinquent in his [mortgage] payments."). "A debtor's failure to make post[-]petition mortgage payments constitutes sufficient

cause to modify an automatic stay." <u>In re Campora</u>, 2015 WL 5178823, at *5 (citations omitted); <u>see</u> <u>In re Sterling</u>, 2018 WL 313085, at *5-6 (weighing <u>Sonnax</u> factors and granting relief from automatic stay where debtor failed to show that he made any post-petition payments on the mortgage).

Additionally, the Court rejects Appellant's argument that the Bankruptcy Court lifted the stay "premature[ly]" by ruling before the State Court issued its decision on Appellant's order to show cause. (<u>See</u> Appellant's Br. at 9-11.) As the Bankruptcy Court made clear during the July 12, 2017 hearing, it vacated the stay to allow the parties to argue the merits of the Foreclosure Action and the effect of the November 2016 Letter in State Court. Thus, the Bankruptcy Court's decision allowed the State Court to address Appellant's order to show cause. (July 2017 Hearing Tr., 4:21-23 ("[Appellant]: [P]resently, the order to show cause, all motions are submitted as of May 31st, and we're still waiting for [the State Court] to rule on it."), 8:2-18 ("The Court: All I'm doing is allowing this to go ahead in State Court. . . . I'm lifting the stay, so you guys can go fight about this in State Court.").)

In light of the foregoing, the Court finds that the Bankruptcy Court did not abuse its discretion in vacating the automatic stay pursuant to 11 U.S.C. § 362(d)(1) and allowing the Foreclosure Action to proceed in State Court.

IV.  Discharge

Finally, Appellant contends that because Shellpoint--as well as Bank of America and the Bank--never filed proofs of claim and because the Bankruptcy Court issued an Order of Discharge under 11 U.S.C. § 727 on April 12, 2017, (see Order of Discharge), "the Bankruptcy Court committed an error of law and an abuse of discretion in not recognizing that [Shellpoint] had been discharged in accordance with Federal Bankruptcy Laws," (Appellant's Br. at 17-18).  This argument also fails.

Section 524 of the Bankruptcy Code provides that a bankruptcy discharge "operates as an injunction against the commencement or continuation of an action . . . to collect, recover or offset any [debt discharged under 11 U.S.C. § 727] as a personal liability of the debtor."  11 U.S.C. § 524(a)(2).  "This section, however, bars only 'acts or actions to collect a discharged debt as a personal liability.  This provision does not prevent foreclosure of a lien on property.'"  Knox v. Countrywide Bank, No. CV 13-CV-3789, 2015 WL 5254519, at *8 (E.D.N.Y. July 29, 2015) (internal quotation marks omitted) (quoting In re Wilson, 492 B.R. 691, 696 (Bankr. S.D.N.Y. 2013)), R&R adopted, No. 13-CV-3789, 2015 WL 5285738 (E.D.N.Y. Sept. 9, 2015), aff'd, 673 F. App'x 31 (2d Cir. 2016).  Accordingly, while Appellant's "personal obligations were discharged, 'a valid mortgage lien survives the

bankruptcy.'" Id. (quoting Drew v. Chase Manhattan Bank, N.A., 185 B.R. 139, 142 (S.D.N.Y. 1995)).

CONCLUSION

For the foregoing reasons, the Bankruptcy Court's Stay Relief Order is AFFIRMED and this appeal is DENIED.

Should Appellant seek in forma pauperis status on appeal, the Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore in forma pauperis status is DENIED for purposes of an appeal. Coppedge v. United States, 369 U.S. 438, 444–45, 82 S. Ct. 917, 8 L. Ed. 2d 21 (1962).

The Clerk of the Court is directed to mail a copy of this Order to the pro se Appellant and mark the case CLOSED.


SO ORDERED.


/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.


Dated:    August __20__, 2018
          Central Islip, New York